William WURTH, Plaintiff-Appellant,

v.

SWINDELL DRESSLER CORPORATION, Defendant-Appellee.

No. 14205.

United States Court of Appeals Seventh Circuit.

Jan. 23, 1964.

**414**

Sydney L. Berger, Wilbur F. Dassel, Evansville, Ind., for appellant.

Fred P. Bamberger, Evansville, Ind., Bamberger, Foreman, Oswald & Hahn, Evansville, Ind., of counsel, for appellee.

Before HASTINGS, Chief Judge, and DUFFY and CASTLE, Circuit Judges.

DUFFY, Circuit Judge.

This suit was brought to recover damages for injuries sustained by plaintiff in a fall from an overhead pipe upon which he had been seated. Plaintiff claims defendant was negligent in permitting gases to be discharged from a gas generator in the building in which plaintiff was working. At the conclusion of plaintiff's case, the trial court sustained defendant's motion for a directed verdict, and entered judgment for the defendant.

The errors relied on arise from the granting of defendant's motion for a directed verdict and also the Court's refusal to allow plaintiff to reopen his case after he had rested.

Plaintiff was an employee of a painting contractor who had contracted to do certain painting work in Building 260 of the Warrick Works of the Aluminum Company of America located in Indiana. Defendant had agreed to install six baking kilns and necessary auxiliaries in Building 260.

Plaintiff was a skilled painter with years of experience in high work. On April 29, 1960, he was painting an overhead pipe approximately thirty feet above the floor level. He was sitting on the pipe as he painted it. Plaintiff claims it was not practical to use a scaffold or a ladder to do this painting.

As part of the installation of the carbon kilns, defendant installed gas generators which produced a gas composed of nitrogen, carbon dioxide and water vapor. None of these products are toxic.

At or about 12:30 p.m. on April 29th, after eating his lunch, plaintiff resumed painting the pipe. He had with him a paint bucket, a paint brush, a wire brush and sandpaper. Plaintiff testified he hung the paint bucket and the brush on a conduit pipe. While working in a seated position, he passed beyond and to the south of a point directly over the generator. He detected no odor of gas. At about 2:30 p.m., using a lighter, plaintiff lit a cigarette and started smoking. He suddenly fell to the floor below, landing some ten or twelve feet south and a bit west of the generator. Plaintiff recalled nothing from the time he started smoking until he regained consciousness the next morning at the hospital. Plaintiff was seriously injured as a result of his fall.

Building 260 is a large structure comprised of seven parallel bays, each having a peaked roof at the top of which is located a ventilator which runs approximately the length of each bay. The westernmost bay in which plaintiff was working is approximately sixty feet in width and more than thirty feet in height.

Defendant admitted the generator produced a gas composed of 82.6% nitrogen, 11.3% carbon dioxide and 6.1% water vapor. Defendant also admitted that it started the generator on the morning of April 29, 1960, and that "the generator was in operation at least part of the day prior to the time when plaintiff fell from the pipe."

It is also admitted that there was an opening on the top of the generator which is called a blow-off vent. Defendant replied affirmatively to the interrogatory: "Did the generator discharge any gases or exhaust products into Building 260 on the 29th of April, 1960?"

Wilbert Lemke was also a painter who was working in Building 260 at the time plaintiff fell. He testified that as he walked by the generator at some time on April 29, he saw " * * * to my opinion, it was a kind of a bluish flame coming out of it and after it got, oh, I'd say five or six feet, something like that, the flame would dissolve and you couldn't see it no more."

Defendant did not warn plaintiff or plaintiff's employer that the generator was in operation on April 29, or that gases were discharged into the air inside the

building. Also, there was testimony that defendant's superintendent Crowe told Fred Jolly, superintendent of plaintiff's employer, that he was "nutty" or "foolish" to allow plaintiff to work in the area while the generator was working.

Although admitting that neither nitrogen nor carbon dioxide is toxic, it is plaintiff's theory that such gases displaced oxygen in the air in the area where plaintiff was working. Plaintiff contends that if there is insufficient oxygen in the air, a person in such area is likely to faint.

■ It is well established that on a motion for a directed verdict, the Court must consider the evidence in a light most favorable to the plaintiff, Cartwright v. Traylor Bros., 7 Cir., 288 F.2d 196, 197, and draw against the party making the motion all inferences which the jury might reasonably draw. Eggenschwiller v. Midwestern Motor Lodge Corp., 7 Cir., 286 F.2d 765, 767.

■ The burden of proof was on the plaintiff to establish a causal connection between the admission of non-toxic gases into the large building where plaintiff was working, and plaintiff's fall from a pipe located thirty feet above the floor level and not directly over the generator.

The trial court based its ruling on the motion for a directed verdict upon the lack of proof of any harmful effect of the gases which were discharged in the building or in concentration sufficient to eliminate oxygen.

In the absence of any evidence establishing a risk of harm or danger to the plaintiff from the defendant's use of the generator, no duty arose which could be the basis of actionable negligence. Southern Ry. Co. v. Harpe, 223 Ind. 124, 129, 58 N.E.2d 346, 348.

■ We think there was no causal relationship proved between defendant's conduct and plaintiff's injuries. In such a situation, the jury cannot be permitted to speculate as to the proximate cause of plaintiff's injuries.

We hold the trial court properly directed a verdict for the defendant.

■ After plaintiff had rested his case, and after the trial court had commenced a discussion leading to its ruling granting a motion for a directed verdict, plaintiff moved that it be permitted to reopen its case, stating that it would call two additional witnesses and that the trial of the case would not be delayed. Plaintiff had not listed these witnesses at the time the pretrial order was entered or at any subsequent time. Plaintiff's attorney said, "If the court feels that a general practitioner is not qualified I will endeavor to obtain somebody who is a specialist, although I don't know what field or what specialty this particular problem would be and that is why I thought Dr. Liebendguth, as a general practitioner, general doctor, his testimony would be sufficient." The Court denied the motion to reopen the case. Under the circumstances of this case, we do not think there was any abuse in the trial court's discretion.

Affirmed. ·