**VOLASCO PRODUCTS COMPANY,**
Plaintiff-Appellee,

v.

**LLOYD A. FRY ROOFING COMPANY,**
Defendant-Appellant.

No. 15908.

United States Court of Appeals
Sixth Circuit.

June 11, 1965.

Burton Y. Weitzenfeld, Chicago, Ill., for appellant, James T. Dougherty, Kahn, Adsit & Arnstein, Chicago, Ill., Jonathan H. Burnett, Frantz, McConnell & Seymour, Knoxville, Tenn., on the brief.

William C. Wilson, Knoxville, Tenn., for appellee, W. L. Ambrose, Jr., Knoxville, Tenn., on the brief, Ambrose & Wilson, Knoxville, Tenn., of counsel.

Before WEICK, Chief Judge, and CECIL and O'SULLIVAN, Circuit Judges.

CECIL, Circuit Judge.

This cause is before the Court for the second time [1] for review of a trial and proceedings in the United States District Court for the Eastern District of Tennessee, wherein Volasco Products Company, plaintiff-appellee, obtained a judgment against Lloyd A. Fry Roofing Company, defendant-appellant. The parties will be referred to herein as plaintiff and defendant.

The plaintiff is a corporation organized and existing under the laws of the state of Tennessee, with headquarters at Knoxville. It is engaged in the manufacture and sale of asphalt roofing products. The defendant is a corporation organized under the laws of the state of Delaware. It does business in Tennessee and is reported to be the largest producer of asphalt roofing products in the United States.

The plaintiff brought the action against the defendant for alleged violation of Sections 1 and 2 of the Sherman Act (Sections 1 and 2, Title 15, U.S.C.), and of Sections 2, 4 and 16 of the Clayton Act, as amended by the Robinson-Patman Act (Sections 13, 15 and 26, Title 15, U.S.C.). The case was tried to a jury. A special verdict [2] was returned in which it was found that the defendant violated Section 2(a) [3] of the Clayton Act, as amended by the Robinson-Patman Act, by discriminating in prices between different purchasers of asphalt saturated felt. The jury further found that the plaintiff was damaged, for loss of profits, in the amount of $25,000, of which $9,000 was attributed to the period subsequent to April 17, 1958, the date of filing the complaint. The district judge trebled [4] the amount of the verdict

1. For opinion on appeal from first trial, see Volasco Products Co. v. Lloyd A. Fry Roofing Co., 6 Cir., 308 F.2d 383.

2. "Did defendant, Lloyd A. Fry Roofing Company, discriminate in price between different purchasers of asphalt saturated felt where the effect of such discrimination may have been substantially to lessen competition or tended to create a monopoly of asphalt saturated felt or to injure, destroy or prevent competition with the defendant in violation of Section 2a of the Clayton Act as amended by the Robinson-Patman Act. Yes YES."

3. Section 2(a), Clayton Act, as amended (Section 13(a), Title 15, U.S.C.) "It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: *Provided,* That nothing herein contained shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered: * * * *And provided further,* That nothing herein contained shall prevent price changes from time to time wherein response to changing conditions affecting the market for or the marketability of the goods concerned, such as but not limited to actual or imminent deterioration of perishable goods, obsolescence of seasonal goods, distress sales under court process, or sales in good faith in discontinuance of business in the goods concerned."

4. Section 4 Clayton Act (Section 15, Title 15 U.S.C.) "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may

and entered judgment for the plaintiff against the defendant, in the amount of $75,000. On petition of the plaintiff, the trial judge allowed $50,000 as attorneys' fees[5] for which amount judgment was also entered against the defendant.

The facts giving rise to this appeal may be briefly stated as follows: In May, 1955, Mr. George C. Krug together with his brother, Mr. J. A. Krug, organized the plaintiff company for the purpose of refining, processing and selling asphalt and asphalt roofing products, including unperforated asphalt saturated felt.[6] Entering a highly competitive market, the Krugs hoped to capture a substantial portion of the asphalt products' market in the Knoxville area by taking advantage of the expected cost savings in shipping their products, the nearest competing plant being 300 miles away. Eleven publicly-held multi-plant corporations were competitors, the largest of which (in asphalt roofing products) was defendant, with 19 plants throughout the United States. In addition, there were two or more so-called "independent" single-plant firms that competed in the area.

On August 1, 1955, just prior to plaintiff's entry into the market, defendant's price was $2.24 per 60 lb. roll of saturated felt, delivered, at Knoxville, Brookville, Indiana (the site of the closest competing plant, which, incidentally, is owned by defendant) and Chicago, Illinois. Between August, 1955, and early March, 1958, defendant's actual prices in Knoxville fluctuated downward to a low of $1.54 per roll on March 3, 1958. The defendant's prices at Brookville and Chicago fluctuated downward to a low of $1.80 per roll on that same date. The first significant geographic price distinc-

tion occurred in February, 1957, when the defendant's price in Knoxville was 20 cents per roll cheaper than in Brookville and Chicago. Beginning in July, 1957, until March, 1958, there was a geographic price distinction between Brookville and Chicago. The peak price differentiation occurred late in January, 1958, when defendant's felt was 34 cents cheaper in Knoxville than in Brookville, and 58 cents cheaper in Knoxville than in Chicago.

In the fiscal year ending April 30, 1957, plaintiff sold 78,914 rolls of felt and made a net profit of $16,697.02 on those sales. In the fiscal year ending April 30, 1958, plaintiff sold 61,271 rolls of felt and sustained a loss of $2,915.31.

In its complaint plaintiff alleges that defendant, as the industry's price leader, along with the cooperation or acquiescence of the other "major" manufacturers, instituted a program of geographic price discrimination in rolled asphalt felt, between the Knoxville area and the rest of the country, in an effort to drive out competition from independent asphalt roofing product manufacturers, most of whom operated in the southwest. Plaintiff charged that the defendant cut prices in the Knoxville area, where the plaintiff did business, below the plaintiff's prices, while at the same time it maintained higher prices outside of plaintiff's limited field of operations. Plaintiff also charged that the defendant combined and conspired with other large manufacturers of asphalt products to engage in an identical pricing program, for the purpose of creating a monopoly and destroying competition.

Plaintiff claims that a multi-plant manufacturer like defendant could absorb the substantial extra delivery costs

sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

5. See Footnote 4.

6. Unperforated asphalt saturated felt is the only asphalt roofing product manufactured by plaintiff during the relevant period as to which any violation of the antitrust laws was alleged. It is frequently referred to simply as felt or asphalt felt. It resembles tar paper and is composed of two ingredients, absorbent dry felt and asphalt (saturant).

for areas farther away from its plants in an effort to compete price-wise with manufacturers with closer plants. Thus, for example, buyers in the Brookville, Indiana area helped pay the cost of delivering felt to the Knoxville area. Defendant, with 19 plants throughout the country, was therefore best able to compete price-wise throughout the country. Plaintiff also claims the decrease in sales, instead of the expected increase of sales as a new and growing company, was caused directly or proximately by defendant's geographic price discrimination.

The questions presented on this appeal involve alleged errors in the admission of testimony, the sufficiency of the evidence to sustain the verdict, the granting of a permanent injunction and the allowance of attorneys' fees.

One of the assignments of error is that the trial judge erred in permitting the witness Krug to testify that the Ohio Paper Company and the Webcote Company had gone into bankruptcy, and erred in allowing plaintiff's counsel to argue that they had been driven out of business as a result of defendant's geographic price differentials.

■ At one point in the direct examination of Mr. George Krug, president of plaintiff company, counsel stated that a background had been laid to show what had happened to the Webcote Company. The trial judge ruled against counsel on this point. Counsel then proceeded to ask further questions. In answer to the question "And are you still buying from them?" the witness said: "No, when they closed, went into bankruptcy, they stopped shipping, stopped production." This, we think, was incompetent testimony. It is the only reference in the testimony before the jury where any-

thing was said concerning the bankruptcy of either the Webcote Company or the Ohio Paper Company. The trial judge admonished [7] the jury that it should not be prejudiced against the defendant by reason of the bankruptcy of the Webcote Company. While the trial judge might have made a stronger statement by ordering the answer stricken and instructing the jury to disregard it, we conclude that the admonition was adequate to dispel any prejudicial effect of the answer of the witness. In view of other competent evidence of the harmful effect on competition due to the defendant's pricing policies, there was no denial of substantial justice. (Rule 61, Federal Rules of Civil Procedure.)

■ In the closing argument, counsel for the plaintiff said, in passing,

"The defendant would like for them (plaintiff) to have kept on selling after the price was below cost. Maybe that is what happened to Web-Cote down here, which is busted now. Maybe that is what happened to the Ohio Paper Company, maybe they kept on selling. These persons wanted us to get entrapped and keep on selling and sell below cost and go busted."

We think that the reference to Webcote and Ohio Paper Company, taken in the context of the rest of the argument, is not prejudicial.

■■ Counsel for the defendant also object to the testimony of Mr. Krug with respect to the alleged cost of production by the defendant. The question here is one of credibility and weight to be given to the testimony, rather than one of competency. The defendant had the right of cross-examination, which seemingly was used rather effectively. Evidence of defendant's costs was only cumulative. It

---

7. "Members of the jury, the fact that a company went into bankruptcy should not prejudice the rights of this defendant in this lawsuit. There are many reasons why a company or corporation or partnership or individual goes into bankruptcy, and the circumstances that this

Leopard Company went into bankruptcy may or may not have anything to do with the problems involved in this suit. But don't let the statements that it went into bankruptcy prejudice the rights of this defendant in this suit."

was not necessary that the plaintiff prove that the defendant sold below cost. It was sufficient to show price discrimination in violation of the statute. F. T. C. v. Anheuser-Busch, Inc., 363 U.S. 536, 546–553, 80 S.Ct. 1267, 4 L.Ed.2d 1385. This Court does not weigh the evidence and we find no error in the admission of this testimony.

Counsel for the defendant challenge the sufficiency of the evidence, with respect to a violation of Section 2 (a) of the Clayton Act, supra, and with respect to proof of damages. We have examined the record and conclude that there was sufficient evidence on both points to submit the questions to the jury. In determining whether a case should be submitted to the jury, the trial judge must consider the evidence in the light most favorable to the plaintiff. Connors v. American Casualty Co., 330 F.2d 505, C.A.6; Wurth v. Swindell Dressler Corp., 327 F.2d 413, C.A.7; Gilreath v. Southern Ry. Co., 323 F.2d 158, C.A.6; Dickerson v. Shepard Warner Elevator Co., 287 F.2d 255, C.A.6; and Kendall v. Gore Properties, Inc., 236 F.2d 673, C.A.D.C. The trial judge properly denied the motions for a directed verdict and for judgment notwithstanding the verdict.

Another assignment of error relates to the plaintiff's proof of damages after April 17, 1958, caused by conduct of the defendant in violation of law prior thereto. The defendant claims that there is a failure of proof in this respect. In our opinion, on the former appeal (308 F.2d at 396) we said:

"The rule is that the plaintiff should be entitled to recover damages that accrue after the filing date, provided they are proximately caused by the wrongful and illegal acts committed by the defendant before the complaint was filed. (Citations) Such damages must be proved with reasonable certainty and must not be speculative or remote."

In Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652, the jury was allowed to compare admission receipts for the four years before and the five years after the alleged illegal restraint was imposed. The plaintiff also introduced evidence of admission receipts of a competing theater not subject to the illegal restraint. In Eastman Kodak Co. v. Southern Photo Co. of New York, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684, to establish its damages, the plaintiff introduced evidence of its profits for four years before and the four years after an alleged illegal restraint was imposed. In Story Parchment Co. v. Paterson Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544, the plaintiff offered evidence of sales revenue it received as a result of the illegal conspiracy charged, as compared with what it would have received had sales been made at reasonable prices. Plaintiff also introduced evidence as to the decline in the value of its business property after the conspiracy began to operate.

The jury found in this case that the defendant did commit wrongful and illegal acts in violation of Section 2 (a) of the Clayton Act, supra. If those acts caused a loss to the plaintiff prior to filing the complaint, it is reasonable to assume that the effect of those illegal acts would not be immediately dispelled upon the filing of the complaint. There is evidence of damages sustained by the plaintiff subsequent to filing the complaint. This is to a large extent shown by a mathematical projection based on the prior business of the plaintiff. We think that the calculations are reasonable and that they give the jury a basis upon which to form a judgment. Such damages can never be shown with mathematical precision. This should not bar the plaintiff from recovery. The jury found that the damages suffered by the plaintiff after April 17, 1958, were $9,000. This is comparatively small and well within the minimum estimate of $35,000 testified to by Mr. Morgan.

The defendant objects to the injunction,[8] designed to restrain it from further violation of the law, and made a part of the judgment in this case in accordance with Section 16, Clayton Act (Section 26, Title 15, U.S.C.). The defendant was found guilty of violating the law and we find no abuse of discretion on the part of the trial judge in issuing an injunction to prevent further violations. If the defendant abides by the law, it cannot be injured by the injunction.

As a part of the injunction, the defendant is "enjoined from establishing prices in the Knoxville area to meet competition of other manufacturers by the adoption of area-wide prices in the event such prices are lower than those charged by defendant in other areas." This part of the injunction is too broad in that the defendant is entitled to lower its prices in the Knoxville area to meet honest, non-violative competition of other manufacturers without respect to its prices in other geographical areas. When, as or if such a situation arises, the defendant can apply to the district judge for a modification of the injunction. The judge can then make a factual determination of the merits of the claim.

Finally, it is claimed that the district judge abused his discretion in allowing attorneys' fees of $50,000. The amount of attorneys' fees to be allowed in connection with an award of damages in an antitrust suit is within the discretion of the trial court, reasonably exercised, and will not be disturbed absent an abuse of discretion. Montague & Co. v. Lowry, 193 U.S. 38, 48, 24 S.Ct. 307, 48 L.Ed. 608; Twentieth Century Fox Film Corp. v. Goldwyn, 328 F.2d 190, 221, C.A. 9, cert. den. 379 U.S. 880, 85 S.Ct. 143, 13 L.Ed.2d 87.

Counsel for plaintiff alleged by affidavits that they spent 3400 hours in the various phases of preparation of the case and in the trial. They further allege that they are customarily paid from twenty-five to thirty-five dollars an hour for their services. Counsel for the defendant deny that counsel for plaintiff either spent 3400 hours in preparation and trial of the case or that it was necessary for them to spend that much time. The trial judge weighed very carefully the matter of fixing attorneys' fees. He considered all of the factors involved and reviewed many cases. He found that a rate of twenty-five dollars per hour for the services of experienced lawyers was reasonable in the Knoxville area. Finally, he considered that despite the amount of work done he would not be justified in allowing more than $50,000 for attorneys' fees. While the fee was not calculated on an exact number of hours or at a particular rate, the amount allowed would equal approximately fifteen dollars per hour on 3,400 hours, or twenty-five dollars per hour on 2,000 hours. We find no abuse of discretion in the allowance of attorneys' fees.

The judgment of the District Court is affirmed.

8. "It Is Ordered And Decreed by the Court that the defendant, Lloyd A. Fry Roofing Company, a corporation, its successors or assigns, and its respective officers, representatives, agents, and employees, directly or through any corporate or other device, be and they hereby are enjoined from discriminating in price against the plaintiff by selling asphalt saturated felt within an area having an approximate radius of 200 miles from Knoxville, Tennessee, at a price which after taking into account all discounts or rebates and delivery charges is lower than the price charged any other purchaser within or outside said area where such lower price undercuts the price at which the purchaser charged the lower price may purchase asphalt saturated felt of like grade and quality from another seller whose lower price is not itself discriminating; they are enjoined from establishing or continuing to recognize Knoxville, Tennessee, as a factory point for pricing purposes and from using Knoxville, Tennessee, as a basing point for establishing delivery charges; and they are enjoined from establishing prices in the Knoxville area to meet the competition of other manufacturers by the adoption of area-wide prices in the event such prices are lower than those charged by defendant in other areas."