**O. M. DRONEY BEVERAGE CO.,** Evelyn Rose Hudak, a/k/a Evelyn Rose Murphy, Plaintiffs,

v.

**MILLER BREWING COMPANY,** Defendant.

No. 4–73 Civ 492.

United States District Court, D. Minnesota, Fourth Division.

Oct. 19, 1973.

Robins, Davis & Lyons, by James R. Safley, Minneapolis, Minn., for plaintiffs.

Gray, Plant, Mooty & Anderson, by Edward J. Callahan, Jr., Minneapolis, Minn., for defendant.

NEVILLE, District Judge.

This case, based on an alleged breach of contract, presents a classical example of a situation where the remedy at law in the form of an award of damages should plaintiffs prevail is adequate. Therefore a court of equity should not interfere by the attempted use of preliminary or permanent injunctive process.

■ Plaintiff Droney Beverage Co. (Droney) alleges that as a distributor of Miller Brewing Company (Miller) products in Minneapolis, Minnesota for some 33 years, it was wronged when overnight by telegram on October 5, 1973 it was advised by Miller that it would no longer sell Droney its products or treat it as its distributor. In one way or another, on the merits of which claim the court does not now pass, Droney claims that this breaches a contract and has sued for several million dollars in damages. It would appear that the original agreement between the parties dated May 3, 1954, though not the last writing between them, contains this provision:

> As is the custom in our industry these sales to you are made on a shipment to shipment basis only. Either of us can terminate this relationship at any time without incurring liability to the other.

Under this exact language the Third Circuit Court of Appeals has held that upon a termination as here was effected, plaintiff has no cause of action and defendant is entitled to a summary judgment. See Jay-El Beverages, Inc. v. Miller Brewing Co., 461 F.2d 658 (3rd Cir. 1972). This court is of the view that such a holding is not the law in this Circuit, at least when applying Minnesota law. Two recent cases, McGinnis Piano and Organ Co. v. Yamaha International Corp., 480 F.2d 474 (8th Cir. 1973) and Ag-Chem Equipment Co., Inc. v. Hahn, Inc., 480 F.2d 482 (8th Cir. 1973), in interpreting the Minnesota law have stated:

> . . . We understand the rule in Minnesota to be that franchise agreements which do not contain provisions for duration or termination are ordinarily terminable by either party at will upon reasonable notice to the other. Reasonable notice is that period of time necessary to close out the franchise and minimize losses.

> We further understand Minnesota law to permit a reasonable duration to be implied in franchise agreements where a dealer has made substantial investments in reliance on the agreement. Reasonableness in such situations is measured by the length of time reasonably necessary for a dealer to recoup its investment. A reasonable notice period prior to termination is also required. As we stated in Clausen & Sons, Inc. v. Theo. Hamm Brewing Co., 395 F.2d 388, 391 (8th Cir. 1968):

> > " * * * [U]nder Minnesota law where an exclusive franchise dealer under an implied contract, terminable on notice, has at the instance of a manufacturer or supplier invested his resources and credit in establishment of a costly distribution facility for the supplier's product, and the supplier thereafter unreasonably terminates the contract and dealership without giving the dealer an opportunity to recoup his investment, a claim may be stated . . . ." 480 F.2d at 479

Thus either a reasonable notice is required in advance of the attempted termination or a reasonable period of time allowed thereafter so as to permit the institution to close out the franchises and minimize losses. Plaintiffs' counsel equates this reasonable time with a period during which he should be entitled to a preliminary injunction to maintain the status quo, contending principally that this would give Droney time to sell its business as a going concern. Doubt as to whether a buyer could be found who would purchase under the present circumstances is attempted to be allayed by pointing to the fact that a more modern standard Miller distributorship agreement—which it is admitted neither party ever signed in this case—provides for the assignment, sale and transfer of the distributorship with the approval of Miller. Plaintiff contends such approval could not be unreasonably withheld were plaintiff able to produce a buyer who was ready, willing and able and experienced.

■ Plaintiff acknowledges that the ultimate relief it seeks in the lawsuit is damages, recognizing that the court

could never issue any sort of a permanent injunction requiring the two parties to continue in perpetuity to do business with each other. Specific enforcement of such a contract as here, if one exists, cannot be granted. Obvious difficulties occur in enforcement and attempted compulsion to "remain married" were such an order ever to enter. What plaintiff has is an ordinary breach of contract lawsuit, if it has a contract, onto which contract has been engrafted by court decision a reasonable period. Miller apparently does not intend in any way to accord Droney this period and if such is the law and Miller is unwarranted in its position it must expect to pay additional damages therefor. Failure of Miller to abide any contracts however is measurable in damages. At the hearing the court suggested to plaintiffs' counsel that it would be inconsistent to argue at this moment that damages are irreparable and cannot be measured and therefore plaintiff needs an injunction, and later at a trial to attempt to prove damages. If damages are provable, it can hardly be said that they are not now capable of measurement and therefore irreparable in view of the fact that the defendant is a financially responsible corporation. Both the *McGinnis Piano* and *Ag-Chem Equipment* cases were damage suits and did not involve preliminary or temporary injunction and therein it was held proper to instruct the jury concerning their consideration of such a period in awarding damages. This court subscribes to that view, it being at best sharp business practices after some 30 years to cut off a distributor by overnight notice. Minnesota even has a statute, Minn.Stat. § 325.15 et seq. prohibiting such conduct though this relates solely to automobile dealers and not to beer distributors and so is not directly apposite here. It illustrates the underlying philosophy of the Minnesota law, however.

The court received evidence from two witnesses called on behalf of plaintiff to advise the court of the past history of the relationship and dealings between the parties, much of which this court considers immaterial on the preliminary injunction issue. So whether good or bad cause exists to support Miller's actions, this issue will be relative in the trial of the damage action but should not bear on the issue of granting or denying a preliminary injunction.

In addition to distributing Miller products Droney also has carried other brands of beverages including soft drinks. There was testimony at the hearing, however, to indicate that Miller products comprise the majority of Droney's business.

It did appear that friction developed in the business relationship in the late 1960s. Miller complained that Droney had failed to make timely stock rotation and thus Droney's major draft beer customer was supplied with stale beer. Also, Miller attempted to promote its products through monthly promotions in which it offered a price reduction to its distributors, hoping that they would match this reduction, and pass the total saving on to the retailer who could then pass it on to the consumer. The object was to increase sales volume through price competition. Apparently Droney balked at these promotions and participated only occasionally. Droney did not always match the amount of Miller's reduction, as requested by Miller. Droney, on at least two occasions in the last five years, attempted to raise its prices to its retailers. The conflict in market strategy caused Droney to raise its price in 1969 to which Miller objected. Miller offered a price support if Droney were to roll back its increase. Droney agreed. The price support was in effect a rebate on certain products sold.

In the last several years Droney lost money on its operations. After a second price rise by Droney it was claimed that Miller terminated the discounts and, so it claims, did not terminate the discounts to other distributors nearby. Droney thus argues other distributors became favored and were able to sell to retailers at less than Droney could.

On October 5, 1973 the sole shareholder of Droney decided to sell the business and wrote Miller informing it of this decision. She was aware that Miller had the right to refuse to do business with any purchaser not approved by it.

On October 6, 1973 Miller sent a telegram terminating the distributorship. There had been no notice of this action and Droney's major shareholder testified it was a complete surprise. Miller apparently has divided Droney's area of responsibility among four other distributors, one of them Droney's major competitor. Droney quickly instituted this action, making various claims, and sought an injunction to prevent the termination. This court entered a temporary restraining order to prevent the termination and set the matter for a hearing on October 12 and again on October 16.

Droney has submitted several theories upon which the court is requested to enter a preliminary injunction. The court is unconvinced that an injunction actually would benefit Droney in the manner it asserts. Certainly the court cannot supervise, nor can the United States Marshal, were the court to order the parties to continue business. Droney never adequately explained why monetary damages are not sufficient. The clear showing of necessity and irreparable harm which is a basic requirement for the issuance of an injunction has not been made in this case.

 Droney asserts two antitrust claims and alleges that these should be the basis of an injunction. First, it claims violations of the Robinson-Patman Act. 15 U.S.C. § 13. The basic allegation is that Section 2(a) of the Robinson-Patman Act has been violated because Miller sold certain of its products to a distributor in competition with Droney at prices lower than those charged Droney. Were these facts established a

violation of the act might or might not be made out. Federal Trade Commission v. Anheuser-Busch, Inc., 363 U.S. 536, 80 S.Ct. 1267, 4 L.Ed.2d 1385 (1960). However, petitioners have not made the clear showing of these facts necessary for the issuance of a preliminary injunction.[1] It is elementary that a party moving for a preliminary injunction must make a "strong showing" that it will eventually prevail on the merits. Cox v. Northwest Airlines, Inc., 319 F.Supp. 92, 95 (D.Minn.1970). The only evidence of price discrimination was the speculation of one witness that because a distributor in competition with Droney was selling a certain product at five or ten cents more than Miller was selling the product to Droney, Miller therefore must be selling the product to that distributor at less than it was selling the product to Droney or granting larger rebates. The witness had no direct knowledge as to (1) the price at which the other distributor was selling the product to retailers, (2) the price at which Miller was selling the product to the other distributor. The alleged price discrimination was simply speculation based on the fact that certain retailers have apparently ceased doing business with Droney and now purchase Miller products from the other distributor. There could be many causes for this change and the court should not easily imply a violation of the Robinson-Patman Act. The clear showing of ultimate victory has not been made out; accordingly the petitioners should be relegated to their treble damage remedy. Checker Motors Corp. v. Chrysler Corp., 283 F. Supp. 876 (S.D.N.Y.1968), aff'd 405 F. 2d 319 (2d Cir.), cert. denied 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969). Moreover, even where there are proven violations of the act the common remedy is to enjoin the violations by Miller, Volasco Products Co. v. Lloyd A. Fry Roofing Co., 346 F.2d 661 (6th Cir.

---

1. Robinson-Patman Act cases wherein injunctions are sought are governed by general equitable principles dealing with injunctive relief. Ingram v. Phillips Petroleum Co., 259 F.Supp. 176 (D.N.M.1966).

1965), cert. denied, 382 U.S. 904, 86 S. Ct. 239, 15 L.Ed.2d 157 (1965), reh. denied, 386 U.S. 1042, 87 S.Ct. 1473, 18 L. Ed.2d 615 (1967), and not to impose a continuing business relationship between the parties. *Cf.* Community Chevrolet, Inc. v. General Motors Corp., 248 F. Supp. 390 (D.Mass.1965).

▮ Second, petitioners claim a violation of Section 1 of the Sherman Act in that defendants have forced upon them an illegal resale price maintenance scheme. 15 U.S.C. § 1, Simpson v. Union Oil Co. of California, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964). Petitioners correctly point out that a supplier may not use coercion on its distributors to maintain resale prices to the distributors' customers. Simpson v. Union Oil, *supra*. Yet the supplier is not prevented from all actions which might tend to allow its product to be sold to a subsequent purchaser at the price it desires. United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960). The supplier still has the right to select those to whom it will sell and also within limits to refuse to deal. United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). The Supreme Court has delineated the freedom a supplier possesses:

> . . . a manufacturer of a product other and equivalent brands of which are readily available in the market may select his customers, and for this purpose he may "franchise" certain dealers to whom, alone, he will sell his goods. Cf. United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L. Ed. 992 (1919). If the restraint stops at that point—if nothing more is involved than vertical "confinement" of the manufacturer's own sales of the merchandise to selected dealers, and if competitive products are readily available to others, the restriction, on these facts alone, would not violate the Sherman Act.

United States v. Arnold Schwinn & Co., 388 U.S. 365, 376, 87 S.Ct. 1856, 18 L.Ed. 2d 1249 (1967).

▮ Price rebates in themselves are not violations of the Sherman Act. Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319 (2d Cir. 1969), cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L. Ed.2d 777 (1969). On these facts there is no clear showing of abuse of these rebates. Droney's sole shareholder herself testified that Miller's at no time threatened termination if Droney did not comply with Miller's promotions and pass on discounts to retailers. *See,* United States v. O. M. Scott & Sons, 303 F. Supp. 141 (D.D.C.1969).

▮ At the hearing Droney alleged a second violation of Section 1 of the Sherman Act. The complaint does not state this claim; however, there was testimony to the effect that Miller's representatives suggested to Droney that Droney should drop other beverage lines and concentrate its efforts in selling Miller's products. Apparently Droney is attempting to make out a claim that Miller's was conditioning its sale of beverages to Droney on Droney not dealing with Miller's competitors. If there was an agreement whereby the Droney company was restricted from dealing in other lines of beverages there might well be a violation of the act. Fashion Originators Guild of America v. Federal Trade Commission, 312 U.S. 457, 61 S. Ct. 703, 85 L.Ed. 949 (1941). But there was no clear showing of this fact. The passing reference of one witness to statements made by a Miller's representative indicating Droney should concentrate on Miller products, statements which may be interpreted several ways, is simply not enough to support an injunction. This court may not presume illegal conduct if actions may be reasonably interpreted as legal. And certainly Miller may not be precluded from simply urging its distributors to make greater efforts to distribute its products, although this may mean that it expends less effort distributing other lines.

Droney also makes its motion under Minn.Stat. § 336.2–309. This statute is

part of the Uniform Commercial Code and provides in part:

. . .

(2) Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party.

(3) Termination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party and an *agreement dispensing with notification is invalid if its operation would be unconscionable.* [Emphasis added]

The Uniform Commercial Code Comment provides:

8. Subsection (3) recognizes that the application of principles of good faith and sound commercial practice normally call for such notification of the termination of a going contract relationship as will give the other party reasonable time to seek a substitute arrangement. An agreement dispensing with notification or limiting the time for the seeking of a substitute arrangement is, of course, valid under this subsection unless the results of putting it into operation would be the creation of an unconscionable state of affairs.

The Minnesota Code Comment, 21A Minn.Stat.Ann. 261 (1966) indicates that there is no Minnesota law dealing with UCC 2–309(3) and the limits it provides on terminations. The above, however, is consistent with *McGinnis Piano* and *Ag-Chem Equipment, supra.*

Since there is no firm showing of probable success on the merits, since there is no showing of irreparable harm and since this is a traditional case where the remedy at law is adequate, the court denies plaintiffs' motion for preliminary injunction.

A separate order has been entered.